Peter A. Ivanick
Richard W. Reinthaler
Allison H. Weiss
DEWEY & LeBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Tel: (212) 259-8000
Fax: (212) 259-6333

- and -

Todd L. Padnos (admitted *pro hac vice*)
DEWEY & LeBOEUF LLP
1950 University Avenue, Suite 500
East Palo Alto, California 94303
Tel: (650) 845-7000
Fax: (650) 845-7333

*Attorneys for the Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
*In re*                                                      :
                                                             :     **Chapter 11**
**AMBAC FINANCIAL GROUP, INC.,**                             :
                                                             :     **Case No. 10-15973 (SCC)**
            **Debtor.**                                      :
                                                             :
------------------------------------------------------------x
:
**AMBAC FINANCIAL GROUP, INC.,**                             :
                                                             :
            **Plaintiff,**                                   :     **Adv. Pro. No. 11-_____ (    )**
                                                             :
      **v.**                                                 :
                                                             :
**KARTHIKEYAN V. VEERA,**                                    :
                                                             :
            **Defendant.**                                   :
                                                             :
------------------------------------------------------------x

**COMPLAINT FOR DECLARATORY RELIEF TO CONFIRM**
**APPLICABILITY OF THE AUTOMATIC STAY**
**AND/OR FOR INJUNCTIVE RELIEF**

Plaintiff-debtor Ambac Financial Group, Inc. (the "Debtor," and, together with its non-debtor affiliates, "Ambac"), by and through its undersigned attorneys, alleges upon knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

## SUMMARY OF ACTION

1.     This adversary proceeding is being brought pursuant to sections 362 and 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 7001(7), 7001(9), 7003, and 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Specifically, the Debtor seeks an order and judgment: (i) declaring that the protections of the automatic stay are applicable to the claims asserted against certain ERISA Defendants (defined below) in a putative class action entitled *Veera v. Ambac Plan Administrative Committee, et al.*, No. 10-cv-4191 (HB) (the "ERISA Action"), currently pending before the Honorable Judge Harold Baer in the United States District Court for the Southern District of New York (the "District Court"); and/or (ii) enjoining Karthikeyan V. Veera, the plaintiff in the ERISA Action and the defendant herein ("Veera"), from continuing to prosecute the ERISA Action pending further order from this Court.

2.     Veera, the plaintiff in the ERISA Action, is a former employee of the Debtor.  He seeks an award of money damages – on behalf of himself and a putative class consisting of all participants in the Ambac Financial Group, Inc. Savings Incentive Plan ("Plan") during the period from October 1, 2006 through July 2, 2008 – from numerous alleged Plan fiduciaries, including certain current and former directors, officers and employees of the Debtor (the "Individual Defendants"), as well as the Savings Plan

Administrative Committee (the "<u>Administrative Committee</u>") under the Debtor's Plan, the Savings Plan Investment Committee (the "<u>Investment Committee</u>"), and the Compensation Committee of the Debtor's Board of Directors (the "<u>Compensation Committee</u>," and together with the Administrative and Investment Committees, the "<u>Committee Defendants</u>").   More specifically, Veera claims that the Individual and Committee Defendants breached fiduciary duties under ERISA owed to Veera and other Plan participants by (i) continuing to offer Ambac common stock as an investment option under the Plan when it was allegedly imprudent to do so; and (ii) maintaining the Plan's pre-existing investment in Ambac common stock when it was allegedly no longer a prudent investment.

3.      Although the Debtor is not a named party to the ERISA Action, there is no doubt that the Debtor and, more importantly, its estate, have the most to lose if the plaintiff in the ERISA Action somehow were to prevail on his claims.  The Committee Defendants lack independent legal status apart from the Debtor, and have no assets of their own.  Indeed, it is unclear why they have been sued, unless Veera contemplates seeking enforcement of any judgment he may obtain against them from the Debtor.  More importantly, the Individual Defendants, have common law, statutory and contractual rights of indemnification from the Debtor, which protect them (to the extent not covered by insurance) from having to pay any judgment that may be entered against them (or any settlement that may be reached) in the ERISA Action, absent a determination by the Board of Directors of the Debtor that they acted in bad faith in failing to fulfill their fiduciary duties.

4.      Any indemnification obligations the Debtor may be required to satisfy will, in turn, reduce the recoveries in this chapter 11 case to other unsecured creditors. Although the Individual Defendants have a Fiduciary Liability Policy (providing up to $5 million in total potential coverage), the amount Veera seeks to recover in the ERISA Action vastly exceeds the amount of potentially available coverage. Thus, whether named as a defendant or not, the Debtor remains a real party-in-interest in the ERISA Action, and has a significant financial stake in its outcome.

5.      Veera has candidly acknowledged that he cannot effectively prosecute his claims in the ERISA Action without extensive (as opposed to narrowly tailored) discovery from the Debtor and its current directors, officers and employees. Indeed, Veera has already sought relief from the automatic stay in order to pursue such discovery, or, alternatively, a declaration from the Bankruptcy Court that the automatic stay does not bar him from serving highly intrusive, burdensome, and unwarranted discovery requests on the Debtor. The discovery Veera seeks would take months to complete, at a cost to the Debtor likely to exceed seven figures, and would require employees critical to the Debtor's reorganization to drop what they are doing and spend all of their time gathering, reviewing and explaining to outside counsel and Veera's counsel (through depositions) potentially hundreds of thousands, if not millions, of hard-copy documents, email and other electronic documents.

6.      The Debtor has objected to Veera's motion on the grounds that the sweeping, all encompassing discovery he seeks should be stayed pending the outcome of this adversary proceeding, and is unwarranted in light of: (i) the highly intrusive and unduly burdensome nature of the discovery being sought; (ii) the omnipresent specter of

the Debtor's indemnification obligations; (iii) the identity of interest the Debtor shares with the defendants in the ERISA Action; and (iv) the critical services eight of the Individual Defendants in the ERISA Action (who are *current* officers and directors of the Debtor and its subsidiaries and affiliates) are providing to the Debtor in connection with its restructuring efforts.

7.      It is difficult to envision a more persuasive case for application of the automatic stay.  The ERISA Action effectively constitutes a suit against the Debtor and its property, inasmuch as (i) the Committee Defendants lack independent legal status apart from the Debtor, have no assets of their own, and share an identity of interest with the Debtor; (ii) the Individual Defendants have common law, statutory, and contractual rights of indemnification from the Debtor and thus any judgment entered against them will likely result in a significant claim against the Debtor's estate; and (iii) allowing plaintiff to pursue the ERISA Action (which is still in its early stages) will only prejudice, unduly delay and adversely affect the Debtor's efforts to reorganize by diverting precious human and financial resources – including, in particular, the eight current officers and directors of Ambac who have been named as defendants in the ERISA Action – away from those efforts at this critical juncture in the Debtor's chapter 11 case.

## JURISDICTION AND VENUE

8.      On November 8, 2010 (the "Commencement Date"), the Debtor commenced a case under chapter 11 of the Bankruptcy Code.  This is an adversary proceeding initiated pursuant to Bankruptcy Rules 7001(7) (to obtain an injunction or other equitable relief), 7001(9) (to obtain a declaratory judgment), and 7003

(commencement of an adversary proceeding). Bankruptcy Rule 7065 provides that a preliminary injunction may be issued by the Court without security.

9. The Debtor seeks declaratory and injunctive relief to protect property of the Debtor as of the commencement of the case and property of the estate. This Court has jurisdiction over the parties and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334. This adversary proceeding is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(G) and, accordingly, this Court has the power to enter final findings of fact and conclusions of law, subject to review pursuant to 28 U.S.C. §158.

10. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409(a).

## **THE PARTIES**

11. The Debtor is a Delaware corporation with its principal place of business in New York, New York. The Debtor's principal operating subsidiary, Ambac Assurance Corporation ("<u>AAC</u>" and, together with the Debtor, "<u>Ambac</u>"), is a Wisconsin-domiciled financial guarantee insurance company whose business includes the issuance of financial guarantee insurance policies to support public finance, structured finance, and international finance transactions.

12. Defendant Veera is the named plaintiff and putative class representative in the ERISA Action, which was purportedly filed on behalf of the Plan and as a class action on behalf of participants in and beneficiaries of the Plan during the period October 1, 2006 through July 2, 2008.

## FACTUAL BACKGROUND

13.     On or about May 24, 2010, prior to the Commencement Date, Veera commenced a putative ERISA class action complaint (the "Original Complaint") in the District Court against the Debtor, the Administrative Committee, the Investment Committee, the Compensation Committee, and the Individual Defendants (individual members of those Committee Defendants).

14.     The Individual Defendants include a number of current officers and employees of Ambac, specifically, Diana Adams (Senior Managing Director), Robert B. Eisman (Senior Managing Director and Chief Accounting Officer), and Anne Gill Kelly (Managing Director, Corporate Secretary, and Assistant General Counsel) (together, the "Current Officers").  Each of the Current Officers performs important functions for the Debtor and its affiliates and is integral to the Debtor's efforts to successfully reorganize. Ms. Adams is a current officer and employee of the Debtor.  Mr. Eisman and Ms. Gill Kelly are both current officers and employees of AAC and current officers of the Debtor. All three of the Current Officers perform substantial amounts of work for the Debtor, including work related to the Debtor's efforts to reorganize.

15.     The Individual Defendants also include certain of the Debtor's current directors, specifically, Laura S. Unger, Thomas C. Theobald, Philip N. Duff, Jill M. Considine, and Henry D.G. Wallace (together, the "Current Directors").  Each of the Current Directors performs an important role in connection with the Debtor's efforts to successfully reorganize.

16.     The remaining Individual Defendants are all former officers of the Debtor (the "Former Officers"), specifically, Thomas J. Gandolfo, William McKinnon, Sean T.

Leonard, Douglas C. Renfield-Miller, Gregg Bienstock, and Timothy J. Stevens. Mr. Gandolfo is a former Chief Financial Officer, Senior Vice President, and Senior Managing Director of the Debtor. Mr. McKinnon is a former Senior Managing Director and Chief Risk Officer of the Debtor. Mr. Leonard is a former Senior Vice President and Chief Financial Officer of the Debtor. Mr. Renfield-Miller is a former Executive Vice President of the Debtor. Mr. Bienstock is a former Senior Vice President and Chief Administrative Officer of the Debtor, and Mr. Stevens is a former Senior Managing Director of the Debtor.

17. The Individual Defendants, in addition to their service as directors, officers and/or employees of the Debtor, also served as members of one or more of the Committee Defendants during the Class Period.

18. All of the Individual Defendants have common law, statutory and contractual rights of indemnification from the Debtor. For example, the Debtor is required, in accordance with section 145 of title 8 of the Delaware Code, Article VII of the Debtor's certificate of incorporation (the "Certificate of Incorporation"), and Article IX of the Debtor's by-laws (the "By-Laws"), to indemnify the Individual Defendants from any and all losses, judgments and defense costs incurred by them in connection with any claims against them based upon, arising out of, or relating to the performance of their duties as officers and directors of the Debtor (including service on the Committee Defendants), absent a determination by the Debtor's Board of Directors that, in performing his or their fiduciary duties, such individual(s) did not act in good faith and in a manner which such person(s) reasonably believed to be in or not opposed to the best interests of the Debtor. Section 145 of title 8 of the Delaware Code permits Delaware

corporations to indemnify officers and employees.  Copies of the Debtor's Certificate of Incorporation and By-Laws are attached hereto as <u>Exhibits A and B</u>.

19.     In addition to the rights of indemnification described above, the Debtor is also specifically required under the terms of the Plan to indemnify the Individual Defendants with respect to the claims asserted in the ERISA Action.  The Debtor's contractual indemnification obligation are set forth in Section 11.16 of the Plan, which provides that "[t]o the maximum extent allowed by law and to the extent not otherwise indemnified, the Employer shall indemnify each member (and former member) of each of the . . . Administrative Committee and . . . Investment Committee . . . against any and all claims, losses, damages, expenses, including counsel fees, incurred by any such person on account of such person's action, or failure to act, in connection with the [Savings] Plan . . . except that no indemnification shall be provided to an Indemnitee who personally profited from any act or transaction in respect of which indemnification is sought, or who knew another Indemnitee would so profit."  A copy of the Plan, as amended and restated as of January 1, 2006, is attached hereto as <u>Exhibit C</u>.[1]

20.     The Plan expressly provided for the creation, and sets forth the powers and duties, of the Administrative and Investment Committees.  The Administrative Committee is responsible for interpreting the Plan and has the final authority with respect to its administration.  The Investment Committee has exclusive authority to manage the Plan assets, except assets consisting of the Debtor's stock.  The Compensation Committee has the limited power and duty to (i) appoint members of the Administrative

---

[1]     Given the scope of the claims asserted in the ERISA Action, it is unclear whether the Individual Defendants' indemnification claims are or would be subordinated pursuant to section 510(b) of the Bankruptcy Code.

and Investment Committees and (ii) evaluate the performance of such Committees and any employees engaged in the administration and management of the Plan.

21.     The Compensation Committee has the same corporate identity as the Debtor, and the Administrative and Investment Committees lack any legal existence independent of the Debtor.   None of the Committee Defendants has any assets independent of the Debtor.

22.     On September 7, 2010, Veera filed an amended ERISA class action complaint [District Court Docket No. 48] (the "Amended Complaint") against the Individual and Committee Defendants (together, the "ERISA Defendants"), but not the Debtor.  The Amended Complaint shortened the class period by more than nine months, and alleges that the Administrative and Investment Committees and their members knew or should have known that the Debtor's common stock was "artificially inflated" between October 1, 2006 and July 2, 2008, and breached their fiduciary duties under ERISA by (i) continuing to offer Ambac common stock as an investment option for the Plan when it was imprudent to do so; and (ii) maintaining the Plan's pre-existing investment in Ambac commons stock when it was no longer a prudent Plan investment.

23.     The Amended Complaint further alleges that the Compensation Committee and its members breached their fiduciary duties under ERISA by failing to (a) assure that the members of the Administrative and Investment Committees had access to information regarding Ambac's financial problems sufficient to enable them to conclude that Ambac common stock was no longer a prudent investment and (b) provide proper oversight in monitoring the performance of the Administrative and Investment

Committees and allowing them to continue offering Ambac stock as an investment option when it was no longer prudent to do so.

24.     On October 20, 2010, the ERISA Defendants filed a motion to dismiss the Amended Complaint and a memorandum of law in support thereof [District Court Docket Nos. 39 and 40].  On November 5, 2010, Veera filed a memorandum of law in opposition to the ERISA Defendants' motion to dismiss [District Court Docket No. 45], and on November 15, 2010, the ERISA Defendants filed their reply thereto [District Court Docket No. 47].  On December 7, 2010, a hearing was held in respect of the ERISA Defendants' motion to dismiss, and on January 6, 2011, the District Court entered an opinion and order denying the motion [District Court Docket No. 51].

25.     On or about January 5, 2011, without prior notice to, or conferring with, the Debtor, Veera filed a motion in the Debtor's chapter 11 case, seeking a declaration from the Bankruptcy Court that the automatic stay applicable to the Debtor and its property does not apply to Veera's efforts to seek discovery from the Debtor or, alternatively, entry of an order lifting the automatic stay, to the extent applicable, so that Veera could issue a subpoena to the Debtor and take all other actions necessary in order to obtain documents and testimony from the Debtor and its current and former directors, officers and employees [Docket No.107] (the "Motion").  The Motion was accompanied by a supporting brief (the "Brief") and Declaration of Stephen J. Fearon, Jr., Veera's counsel (the "Declaration").  Attached to the Declaration as Exhibit D was a draft rider to a proposed subpoena, "substantially similar in form and substance to the subpoena [Veera] intends to serve on [the Debtor]" (Declaration ¶ 7) (the "Subpoena") if the Court were to grant the Motion.

26.     The proposed Subpoena lists sixty-two categories of documents demanding virtually all documents relating to the Debtor's finances and defines the relevant time period as from October 1, 2006 through September 7, 2010 (the "Relevant Time Period"), even though under the Discovery Stipulation entered by the District Court in the ERISA Action, the end of the relevant period for discovery purposes is the last day of the proposed class period, July 2, 2008.

27.     The all-encompassing discovery Veera seeks is precisely the kind of intrusive interference with the Debtor's chapter 11 case that the automatic stay was enacted to prevent.  Contrary to Veera's contention in its Motion that the record sought "could easily be produced with minimal cost and effort on the part of the Debtor," a quick perusal of the sixty-two requests for "all documents" – relating to virtually every aspect of the Debtor's (and AAC's) business *spanning a four-year period* – reveals the excessive and unwarranted burden and expense such discovery would impose on the Debtor and its estate.  The discovery Veera seeks also goes well beyond what is relevant to the claims and defenses in the ERISA Action.  The sixty-two categories of documents sought have almost no limits and are not narrowly tailored.  They include requests for "all documents" relating to Ambac's: (i) financial condition and performance; (ii) risk exposures; (iii) investments; (iv) loss exposures; (v) communications with AAC's regulators; and (vi) decisions to stop or slow the sale of new financial guaranty insurance policies by AAC.  Other requests seek: (vii) all email communications (*on any subject*) between or among the Individual Defendants; (viii) all communications regarding a potential bankruptcy filing; (ix) all communications with credit ratings agencies; (x) all communications with investors; (xi) all communications relating to the Debtor's stock

price; (xii) all audit work papers and communications with Ambac's accountants and auditors; and (xiii) human resources and personnel files.

28.     Complying with these requests (including a privilege review by the Debtor's outside counsel and AAC's regulator) would take months to complete, at an enormous cost to the Debtor, and would require the Debtor's current staff, which is already depleted and working full-time on the Debtor's restructuring efforts, to drop what they are doing in order to locate, produce and review for privilege and responsiveness hundreds of thousands (if not millions) of hard-copy documents, emails and other electronic files.[2]

29.     In light of the extraordinarily intrusive, burdensome and unwarranted nature of the discovery sought, the omnipresent specter of the Debtor's indemnification obligations, and the consequent likelihood that any judgment obtained or settlement reached with the ERISA Defendants would result in the assertion of significant claims against the Debtor's estate, on January 12, 2011, the Debtor filed an objection to Veera's Motion [Docket No. 114] (the "Objection").  The Debtor argued, among other things, in its Objection that the protections of the automatic stay apply (or should be held to apply) to the ERISA Defendants given (i) the identity of interest that the Committee and Individual Defendants share with the Debtor; (ii) the Debtor's indemnification obligations; and (iii) the critical services the Current Officers and Current Directors are providing to the Debtor in connection with its reorganization efforts.  Accordingly, the

---

[2]     Many of the documents requested by Veera fall within the scope of a Joint Interest, Sharing and Confidentiality Agreement between AAC and the Office of the Commissioner of Insurance of the State of Wisconsin ("OCI"), AAC's regulator, and are also protected from discovery under OCI's statutory privilege under Wis. Stat. §601.465.  Indeed, by letter dated October 1, 2010 in response to discovery requests Veera previously served on the Debtor before he amended the complaint and dropped the Debtor as a defendant, OCI previously notified directed the Debtor not to produce to Veera many of the documents Veera seeks in the Subpoena.

Debtor informed the Court that it intended to commence the instant adversary proceeding, and requested that the Motion be denied (or held in abeyance) pending the outcome of this proceeding.

30.     No cause has been shown for granting relief from the automatic stay. Veera has proffered no reasonable explanation as to why determination of the issues raised in the ERISA Action cannot be determined by the Bankruptcy Court following Plan confirmation or as part of the Plan negotiation and confirmation process. Granting relief from the stay would not result in an expeditious resolution of the issues in the ERISA Action, which is in the early stages of discovery and has not been scheduled for trial. Under the current Scheduling Order, a Joint Pretrial Order is not due until November 30, 2011, suggesting that trial will not be held until 2012 at the earliest, well after the Debtor expects to present its chapter 11 plan of reorganization to the Bankruptcy Court for approval. Granting relief from the automatic stay would, moreover, significantly bog down the chapter 11 proceedings with months of needless delay and discovery disputes. Relief from the automatic stay would thus interfere with the Debtor's chapter 11 case and potentially encourage other plaintiffs to seek similar relief from the automatic stay.

31.     In addition, although the fees and expenses of the ERISA Defendants' counsel in connection with the defense of the ERISA Action are covered, up to $5,000,000 in the aggregate, by the Debtor's fiduciary liability insurance policy, a copy of which is attached hereto as Exhibit D (without the related endorsements) (the "Fiduciary Liability Policy"), it is not clear whether the very substantial costs (including outside professional fees and expenses) of complying with Veera's discovery requests

would be covered by the Fiduciary Liability Policy.[3]  If they are not covered, such fees and expenses (along with the unquantifiable internal cost of compliance in terms of diversion of resources and personnel) – which would be substantial – would be borne by the Debtor's estate.

32.     In short, judicial economy would best be served by not requiring the Debtor to respond to Veera's extraordinarily overbroad, burdensome and irrelevant discovery requests and by applying the protections of the automatic stay to the claims asserted against the ERISA Defendants in the ERISA Action.

## FIRST CLAIM FOR RELIEF

**(For a Declaration that the Automatic Stay of Section
362(a) of the Bankruptcy Code Applies to the
Committee and Individual ERISA Defendants)**

33.     The Debtor repeats and realleges each and every allegation contained in the paragraphs 1 through 32 of this Complaint as if set forth in full herein.

34.     Pursuant to section 362(a)(1) and (3) of the Bankruptcy Code, upon the Debtor's filing of its petition under chapter 11 of the Bankruptcy Code, any proceedings that commenced prior to the Commencement Date against the Debtor or its property were automatically stayed, including, without limitation, the ERISA Action.  The automatic stay applies to actions against non-debtors where there is a sufficient identity of interest between the debtor and non-debtors that the debtor may be said to be the real party

---

[3]     The Insuring Agreement set forth in the Fiduciary Liability Policy provides that "[t]he Insurer shall pay on behalf of the Insureds['] Loss for which the Insureds become legally obligated to pay on account of any Claim . . . for a Wrongful Act . . . by an Insured or by any person for whose Wrongful Acts the Insured is legally responsible."  Thus, pursuant to the Fiduciary Liability Policy, the insurer is required to defend the Defendants, as "Insureds," who are alleged to have committed a "Wrongful Act."  However, the Fiduciary Liability Policy does not specifically address whether the insurer is required to pay for the fees and expenses incurred by the Debtor in responding to the Subpoena.

defendant and a judgment against the non-debtors will in effect be a judgment against the debtor.

35.    While, in the Amended Complaint, Veera dropped the Debtor as a named defendant in the ERISA Action, this change was merely cosmetic, as the Committee Defendants, which have no legal existence or assets independent of the Debtor, and the Debtor's Current and Former Officers and Directors, whom the Debtor has indemnified, remain parties to the suit.  In fact, the Debtor is listed as a "Non Party Entity" in the "Parties" section of the Amended Complaint, evidencing the continued implication of the Debtor in the ERISA Action.  (Amended Complaint at §6(B)).  As evidenced by the Subpoena, if the ERISA Action proceeds, the Debtor will be called upon to produce information that will aid Veera in the prosecution of the suit.  Should the ERISA Action continue, the Debtor will lack the opportunity to participate meaningfully in a case that will likely result in claims against its estate.

36.    As described above, the Committee Defendants have no legal existence or assets independent of the Debtor.  It is thus unclear why they have been sued, unless Veera contemplates seeking enforcement of any judgment he may obtain against the Committee Defendants from the Debtor.  If this is Veera's intent, continuation of the ERISA Action against the Committee Defendants would be tantamount to allowing Veera to sue the Debtor.  Accordingly, the ERISA Action against the Committee Defendants should be stayed.

37.    Further, as described above, the Individual Defendants have common law, statutory, and contractual rights of indemnification from the Debtor.  The ERISA Action has already triggered claims against the Debtor's Fiduciary Liability Policy, and in the

event the Individual Defendants incur legal fees and expenses in excess of the policy limits of $5,000,000, continuation of the ERISA Action will surely result in the assertion by them of claims for indemnification directly against the Debtor. Accordingly, the ERISA Action should be stayed.

38. Moreover, as explained in further detail in the Objection, Veera's Motion, if granted, would result in the Debtor's Current Officers and Directors expending significant amounts of time producing and reviewing documents responsive to Veera's discovery requests and/or participating in depositions. The Current Officers and Directors are instrumental to the Debtor's reorganization and continuation of the ERISA Action would distract them from performing services critical to the Debtor's reorganization and would needlessly delay the Debtor's reorganization efforts. Accordingly, for this additional reason, the ERISA Action should be stayed.

## SECOND CLAIM FOR RELIEF

**(For Injunctive Relief Pursuant to 11 U.S.C.
§105(a) and Bankruptcy Rule 7065)**

39. The Debtor repeats and realleges each and every allegation contained in paragraphs 1 through 38 of this Complaint as if set forth in full herein.

40. In the bankruptcy context, preliminary injunctions are issued pursuant to (i) section 105(a) of the Bankruptcy Code, pursuant to which Bankruptcy Courts are empowered to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and (ii) Bankruptcy Rule 7065, pursuant to which the Bankruptcy Court may grant a preliminary injunction on application of a debtor in possession without the debtor in possession being required to (a) comply with Rule 65 of

the Federal Rules of Civil Procedure or (b) post any security as a condition to the Court's grant of such relief.

41.     Pursuant to the broad powers of section 105(a) of the Bankruptcy Code and applicable case law, a bankruptcy court may enjoin actions against non-debtors under various circumstances, including where a plaintiff would gain an opportunity to make an end-run around the protections usually provided by the Bankruptcy Code.  For the reasons stated herein, the Court should apply section 105(a) of the Bankruptcy Code to enjoin the continuation of the ERISA Action against the Committee and the Individual Defendants, because such continuation will impinge on the protections provided by the Bankruptcy Code, diminishing the Debtor's prospects for successfully confirming a plan of reorganization and interfering with property of the Debtor's chapter 11 estate.

42.     In determining whether to grant a preliminary injunction pursuant to section 105(a), courts generally look to the following four factors: (i) whether there is a likelihood of successful reorganization; (ii) whether there is an imminent irreparable harm to the estate in the absence of an injunction; (iii) whether the balance of harms tips in favor of the moving party; and (iv) whether the public interest weighs in favor of an injunction.  The Debtor satisfies these factors and, as a result, the ERISA Action should be enjoined.

43.     At this early stage in the Debtor's chapter 11 case, there remains ample time for the Debtor to submit a confirmable plan of reorganization, and the Debtor has taken affirmative steps in negotiation with its regulators and creditors.

44.     The Debtor will suffer immediate, irreparable harm if the ERISA Action proceeds.  As explained above, due to the Debtor's indemnity obligations, the Committee

Defendants' lack of assets outside of the Debtor's estate, and the identity of interest between the Committee Defendants, the Individual Defendants and the Debtor, unless the prosecution of the ERISA Action is stayed, the Debtor will need to divert considerable resources from its reorganization efforts to the ERISA Action. Should the ERISA Action proceed, the Debtor will incur or suffer:

(i) The Diversion of Individuals Critical to the Debtors' Reorganization. The Current Officers and Current Directors, who are critical to the Debtor's reorganization effort, will be distracted from pursuing the formulation and successful enactment of the Debtor's reorganization plan due to their required participation in responding to discovery requests and assisting in the preparation of defenses in the ERISA Action. Such a disruption to the Debtor's reorganization efforts will injure the Debtor and all parties-in-interest because it will divert the attention of the Debtor's key employees and outside counsel from what must be their first priority – restructuring the business and confirming a plan of reorganization for the Debtors;

(ii) The Potential Impairment of the Debtor's Assets. The accrual and payment of indemnification claims asserted by the Individual Defendants and, potentially, any judgment obtained against or settlement reached with the Committee Defendants would reduce the value of the Debtor's estate, thereby reducing creditor recoveries. Any judgment against the Individual Defendants could result in fixed or liquidated damages claims against the Debtor that otherwise might be avoided with the active participation of the Debtor in the defense of such actions; and

(iii) Substantial Expenses in Responding to Extensive Discovery. As even a cursory review of the proposed Subpoena will confirm, allowing discovery in the ERISA Action to proceed – if not carefully controlled, narrowly circumscribed and tailored to the issues in the case – will impose a substantial burden and expense on the Debtor and unduly delay its reorganization, to the detriment of creditors generally.

45. The balance of harms tips strongly in favor of the Debtor. It would be unduly expensive and burdensome for the Debtor to have to comply with Veera's

extraordinarily overbroad discovery requests and/or monitor the ERISA Action in order to protect the Debtor's significant financial interest in the outcome. The ERISA Plaintiffs, on the other hand, will suffer no hardship if the prosecution of the ERISA Action is enjoined while the Debtor proceeds to with the development and confirmation of its plan of reorganization.

46. Furthermore, should the automatic stay apply, as it should, to the Committee Defendants and Current Officers and Directors, continued prosecution of the ERISA Action against the Former Officers alone would not lessen the burden borne by the Debtor, and would simply increase the risk of related and duplicative litigation once the Debtor emerges from bankruptcy. Such duplication of effort may only be spared if the ERISA Action is stayed as to all of its defendants.

47. Finally, it is in the public interest that the ERISA Action be enjoined. A grant of injunctive relief in this case through an injunction staying the ERISA Action aligns squarely with the central goals of the Bankruptcy Code. Given the Debtor's size, the nature of the business it conducts, and the number of livelihoods dependent on its successful reorganization, the public will benefit from the Debtor's ability to dedicate its time and resources to reorganization rather than litigation. If given the breathing space afforded by the injunctive relief requested, the Debtors will have the opportunity to work efficiently to file a confirmable plan of reorganization.

48.      WHEREFORE, the Debtors demand judgment as follows: (i) on the first claim for relief, a declaration that the automatic stay applies to the ERISA Defendants in the ERISA Action pursuant to 11 U.S.C. §362(a); and/or (ii) on the second claim for relief, preliminary and permanent injunctive relief, pursuant to section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7065, barring the continued prosecution of the ERISA Action; and (iii) such other relief as the Court deems appropriate.

Dated: January 18, 2011                    Respectfully Submitted,
        New York, New York

                                           /s/ Richard W. Reinthaler
                                           Peter A. Ivanick
                                           Richard W. Reinthaler
                                           Allison H. Weiss
                                           DEWEY & LEBOEUF LLP
                                           1301 Avenue of the Americas
                                           New York, New York 10019
                                           Tel: (212) 259-8000
                                           Fax: (212) 259-6333

                                           - and -

                                           Todd L. Padnos (admitted *pro hac vice*)
                                           DEWEY & LEBOEUF LLP
                                           1950 University Avenue, Suite 500
                                           East Palo Alto, California 94303
                                           Tel: (650) 845-7000
                                           Fax: (650) 845-7333

                                           *Attorneys for the Debtor and Debtor in*
                                           *Possession*